## SPRECKELS SUGAR REFINING COMPANY *v.* McCLAIN.

ERROR TO THE CIRCUIT COURT OF APPEALS FOR THE THIRD CIRCUIT.

No. 103. Argued December 3, 1903.—Decided February 23, 1904.

1. Subdivision 4, section 629, Rev. Stat., was not superseded by the Judiciary Act of 1887, 8, and under it a Circuit Court may take cognizance of a suit arising under an act providing for internal revenue without regard to the citizenship of the parties.

2. Where the constitutionality of an act of Congress is not drawn in question, a case involving simply the construction of the act is not embraced by the fifth section of the Judiciary Act of 1891.

3. A suit against a collector to recover sums paid under protest as taxes imposed by the War Revenue Act of 1898, 30 Stat. 448, is, within the meaning of the Judiciary Act of 1891, to be deemed one arising under both the Constitution and the laws of the United States, if relief be sought upon the ground that the taxing law is unconstitutional, and if constitutional that its provisions, properly construed, do not authorize the collection of the tax in question.

4. A case "arising . . . under the revenue laws" section 6, Judiciary Act of 1891, and involving the construction of a law providing for internal revenue, but which, from the outset, from the plaintiff's showing involves the application or construction of the Constitution, or in which is drawn in question the constitutionality of an act of Congress, may be carried by the plaintiff, as of right, the requisite amount being involved, from the Circuit Court of Appeals to this court for final determination.

5. The tax imposed by section 27 of the War Revenue Act of 1898, upon the gross annual receipts, in excess of $250,000 of any corporation or company carrying on or doing the business of refining sugar, is an excise, and not a direct tax to be apportioned among the States according to numbers. In estimating the gross annual receipts of the company for purposes of that tax, receipts derived from the use of wharves used by it in connection

with its business should be included, but the receipts by way of interest received on its bank deposits or dividends from stock held by it in other companies should be excluded.

THE plaintiff in error, who was the plaintiff below, is a sugar refining company, incorporated under the statutes of Pennsylvania for the purpose . "of refining sugar, which will involve the buying of the raw material therefor, and selling the manufactured products, and of doing whatever else should be incidental to the said business of refining."

The defendant is the Collector of Internal Revenue for the First District of that Commonwealth.

The plaintiff seeks by two separate actions to recover certain sums, paid by it under protest to the defendant as Collector, and which it is alleged were unlawfully exacted by that officer under the twenty-seventh section of the act of June 13, 1898, entitled "An act to provide ways and means to meet war expenditures, and for other purposes;" by which act a tax was imposed upon the gross annual receipts, in excess of a named sum, of every person, firm, corporation or company carrying on or doing the business of refining sugar—the amount of the tax to be determined by the returns of business required by the statute. 30 Stat. 448, 464, c. 448.

By agreement of the parties, the issues in the two causes were consolidated and tried as one cause.

It is conceded that before bringing the actions the plaintiff did all that was required in order to maintain a suit against the Collector, and that the payments made by it to that officer were not voluntary.

The record contains a summary of the returns made by the plaintiff covering its entire gross receipts from June 14, 1898, to August 1, 1900, under these heads: Period covered by return; Indebtedness due before June 14, 1898; Amounts received from interest, rent and wharfage, and stevedoring; Sugar sold since June 14, 1898; Gross receipts; Amount of tax paid; and Dates of payment."

The plaintiff contended that for the purposes of the tax in

question certain things were included, as being part of its gro
annual receipts arising from business, which could not properly
have been so included, and that no tax could legally have been
exacted on account of them.   The Government insisted that
no taxes had been exacted which the law did not require to be
paid.

In its statement of demand the plaintiff alleges that no part
of its receipts from other sources than the business of refining
sugar was taxable under the provisions of the act; that no tax
upon receipts was payable or collectible before the end of the
year from the date of the passage of the act; that the adminis-
tration of the act makes arbitrary, unjust and illegal discrimi-
nation, founded on a pretended difference between the business
of manufacturing and of refining sugar, between the plaintiff
and other persons, firms, corporations and companies carrying
on and doing the business of refining sugar; and that all the
provisions of the act subjecting the plaintiff to pay the tax in
question were in violation of the Constitution of the United
States and void.

That statement also shows that upon appeal to the Com-
missioner of Internal Revenue, it urged the following reasons
why the sums it had paid should be refunded: That the act, so
far as it assumed to subject corporations or companies carrying
on or doing business of refining sugar to pay a special excise
tax, was unconstitutional and void; that the tax was a direct
tax, which had not been apportioned among the several States
as required by the Constitution, was not uniform throughout
the United States, and was invalid; that the plaintiff was and
at all times had been engaged in the business of manufacturing
and not in that of refining sugar; that it refines sugar only
incidentally in the process of manufacture, and is, therefore,
not liable for the payment of the tax; that by the provisions of
the act the tax was payable annually at the end of each year
and the collection thereof monthly or for periods less than a
year and prior to the expiration of the year was illegal, un-
authorized and void; and that the tax was assessed upon and

collected from gross receipts that included receipts outside of those coming from the business of refining sugar; that such gross receipts included receipts from sales of sugar made prior to the passage of the act, from interest on loans and indebtedness, from dividends upon stock owned by the plaintiff in other sugar refining companies, from wharfage collected by it upon wharves owned by it, and from receipts from other sources.

One of the contentions of the plaintiff was that apart from its constitutionality, the act of 1898, properly construed, did not embrace the claims here in dispute, and therefore did not authorize the defendant to demand and collect the taxes here in question.

The cause was determined in the Circuit Court upon an agreed special verdict of a jury. Some of the positions taken by the plaintiff were sustained while others were overruled. Judgment was rendered in favor of the plaintiff for $1056.82, the aggregate of the sums paid (with interest thereon) by way of tax upon receipts on business done before the passage of the act, and for stevedoring. 109 Fed. Rep. 76. The plaintiff prosecuted a writ of error to the Circuit Court of Appeals, which sustained the judgment, except in one particular, namely, in requiring the plaintiff to pay the tax in question otherwise than annually. 113 Fed. Rep. 244. And the case is here upon writ of error sued out by the plaintiff.

It may be stated that both courts below formally sustained the constitutionality of the act of 1898, remitting that question to this court for full consideration and determination.

*Mr. John G. Johnson* for plaintiff in error:

It is necessary that the constitutional question which has thus been practically relegated by the Circuit Court and by the Circuit Court of Appeals, to this court, for actual decision, shall be by it determined. In dealing with this question, it must consider the whole subject-matter of controversy. *Am. Sugar Ref'g Co.* v. *New Orleans,* 181 U. S. 277; *Huguley Mfg. Co.* v. *Galeton Mills,* 184 U. S. 290; *Carey Mfg. Co.* v. *Acme Co.,* 187

U. S. 427; *Robinson* v. *Caldwell,* 165 U. S. 359; *United States* v. *Am. Bell Tel. Co.,* 159 U. S. 548, 553.

Section 27 of the War Revenue Act of 1898 imposes no tax upon receipts by sugar refining companies from wharfage paid to them for the use of wharves belonging to them. It amounts to a direct tax on rentals. The wharves were used for business other than sugar refining. The business of building wharves for accommodation of vessels with power to demand wharfage therefor was distinct from the sugar business and plaintiff in error should not be obliged to pay a percentage on wharfage received by it when all other wharf owners were exempt.

If the act meant what the department said, it was unconstitutional, as imposing an "excise" duty upon one class of refineries, and exacting no such duty from another. The plaintiff was made to pay the tax, whilst its competitors, who refined sugar made from the juice of domestic beets and cane, were allowed to escape, thereby producing unjust and illegal discrimination between persons in similar circumstances material to their rights. *Yick Wo* v. *Hopkins,* 118 U. S. 356.

Section 27 imposes no tax upon receipts by sugar refining companies of interest paid to them upon their deposits in bank and of dividends from investments in shares and other securities. As to what an excise tax is, see Century Dictionary, and authorities cited; Bouvier, citing 1 Black. Com., 318; Story on the Const. § 950; Cooley on Taxation, 4, and see as to non-taxable elements of business, *People ex rel. &c.* v. *Roberts,* 154 N. Y. 1; *People* v. *Albany Ins. Co.,* 92 N. Y. 458; *Bailey* v. *R. R. Co.,* 106 U. S. 109. To tax such dividends would be double taxation. Cooley on Taxation (2d ed.), ch. VI, p. 225; *Merchant's Ins. Co.* v. *McCartney,* 1 Lowell, 447; *S. C.,* 17 Fed. Cas. 46.

Section 27 of the War Revenue Act is unconstitutional, because it imposes a direct tax not in accordance with constitutional requirements.

Congress may levy an excise tax upon business, in the shape of a license tax, or of a requirement of the payment of a desig-

nated amount, because of the privilege of doing business. As long as the tax is not imposed upon the *rem*, but is required to be paid as a condition, or in consideration, of a business or privilege, it is an excise tax. Congress, however, cannot label a direct tax an "excise tax," if the assessment is really upon the *rem*.

The tax under section 27 is a direct tax. *Pollock* v. *F. L. & Trust Co.*, 157 U. S. 429; *S. C.*, 158 U. S. 601, 629, 634. See also *Cook* v. *Pennsylvania*, 97 U. S. 566; *Pacific Ins. Co.* v. *Soule*, 7 Wall. 445; *Nicol* v. *Ames*, 173 U. S. 509.

*Mr. Solicitor General Hoyt* for defendant in error:

The court has no jurisdiction of this case, and the writ of error must be dismissed. If the Circuit Court of Appeals had jurisdiction, that court, having passed upon the entire case without certifying the constitutional question, and no petition for certiorari having been submitted, more than a year having elapsed, the case is not properly here. *Robinson* v. *Caldwell*, 165 U. S. 359. If the Circuit Court of Appeals did not have jurisdiction, the writ of error must nevertheless be dismissed. The jurisdiction of the Circuit Court rested solely on the ground that the suit arose under the Constitution or laws of the United States. As the constitutional question appeared on the face of the first pleading in the case, the appellate jurisdiction of this court, under section 5 of the Circuit Court of Appeals Act, was exclusive. *American Sugar Refining Co.* v. *New Orleans*, 181 U. S. 281; *Huguley Mfg. Co.* v. *Galeton Cotton Mills*, 184 U. S. 290. The writ of error having been sued out to review, not the judgment of the Circuit Court, but the judgment of the Circuit Court of Appeals, this court has no jurisdiction under section 5 of the Circuit Court of Appeals Act. There are no separate grounds of jurisdiction in this case because of a constitutional question and of a question arising under a revenue law; the case is one which clearly arose solely under the "Constitution or laws of the United States." The judgment of the Circuit Court of Appeals was not final, and for that reason not re-

viewable here. See *Keystone Iron Co.* v. *Martin*, 132 U. S. 91; *Bostwick* v. *Brinkerhoff*, 106 U. S. 3.

It is asserted that the tax is not justly laid upon the plaintiff because it manufactures rather than refines sugar. But under the facts plainly existing in the sugar trade and shown here, the manufacturing is only another name for refining, and the latter process is "incident" to manufacture only in the sense that the greater includes the less. As to the matter of interest, wharfage and rent, the property from which these items of income were derived was all part of the capital embarked in the business of sugar refining. The company's charter was given to enable it to refine sugar, and this purpose involves the purchase of raw material, the sale of manufactured products and the doing everything else incidental to the business. The reasoning of the courts below is conclusive on these points. The situation as to interest on deposits and dividends from investments is precisely the same.

The point about double taxation is untenable. Duplicate taxation is not open to legal objection when it is plainly intended or when it naturally and unavoidably results from the law. Cooley on Taxation, 222, 223; *The Delaware R. R. Tax*, 18 Wall. 206; *Sturges* v. *Carter*, 114 U. S. 511; *New Orleans* v. *Houston*, 119 U. S. 265; *Patton* v. *Brady*, 184 U. S. 608. The act contains nothing to avoid the effect of double taxation, and if it has really supervened, which is very doubtful, any such collateral result operating equally on all who are similarly placed is natural, is reasonably to be contemplated in such a law, is not unjust, and, as in many other tax laws, is unavoidable.

The tax is an excise and plainly indirect. The definitions and the opposing argument in *Patton* v. *Brady*, 184 U. S. 608, show that a tax upon manufacture or the process of manufacture is an excise and indirect. In considering the nature of the tax as an excise, it makes no difference how the manufacturing activities are measured in the imposition of the tax. This is a tax upon the process of production, and in the last

analysis is also a tax on consumption. In either aspect it is indirect. It is plain that the incidence shifts.

The question here is purely constitutional and legal and is eminently practical. The economic test should not rule. But even the economists would regard as indirect this particular variety of tax upon the gains of a calling, because it rests upon the energies of manufacture and not upon professional receipts or the gains of personal industry. It is evident from the opinion of the court in the *Income Tax Cases*, 157 U. S. 429, 579; 158 U. S. 601, 711, that notwithstanding the abstract economic doctrine, the court regards taxes on all business gains, professional earnings, salaries, etc., as excises and indirect taxes. Here we have a case which lies outside both the economic and the judicial classification of direct taxes.

The *Income Tax Cases* state the net result of all the decisions holding that certain taxes are direct taxes and therefore must be apportioned, and admit to that category, besides the poll tax specified by the Constitution, only taxes on land, on the income of land, on personal property in general, and on the income of personal property.

The authorities which may be invoked to support the argument that a tax on an incident or function of property is a direct tax upon the property itself simply show that the States cannot, directly or indirectly, burden the exercise by Congress of the powers committed to it by the Constitution, nor may Congress burden the agencies or instrumentalities employed by the States in the exercise of their powers. That doctrine does not in the least affect this case.

There can be no valid doubt of the right of Congress to select this subject for taxation; and there can be no doubt that in laying this excise Congress observed the rule of uniformity as held to mean a geographical uniformity.

The Government contentions may be summarized as follows: That under its charter and in fact, plaintiff is refining sugar, involving related purposes which the charter defines; that the tax on interest, wharfage and rent, which are natu-

rally and fairly incidental to the business of sugar refining, was justly laid; that the tax is distinctly an excise and indirect, and, so considered, it is uniform; that it cannot be viewed as direct under the decisions of this court or under any authorities, judicial or economic, (*a*) because it does not fall upon persons or property or incomes, except in the most remote and indirect sense; (*b*) because it falls upon a calling or occupation or the gains therefrom; (*c*) because it really operates upon the *operation* of an industry, the *exercise* of a right, the *use* of property, upon the business energies or activities; (*d*) because the incidence of the tax can be, and is, shifted and passed on, and, while immediately paid by the refiner, is ultimately paid by the consumer.

MR. JUSTICE HARLAN, after making the foregoing statement, delivered the opinion of the court.

We are met at the threshold of this case with a question of jurisdiction raised by the Government, which contends that under the existing statutes the judgment of the Circuit Court of Appeals cannot be reviewed by this court, at the instance of the plaintiff, as of right.

By the fifth section of the Judiciary Act of March 3, 1891, appeals or writs of error may be taken from the District Courts or from the existing Circuit Courts direct to this court in certain specified cases, among which is "any case that involves the construction or application of the Constitution of the United States," and "any case in which the constitutionality of any law of the United States . . . is drawn in question." § 5.

By the sixth section of the same act it is provided that the Circuit Courts of Appeals "shall exercise appellate jurisdiction to review by appeal or by writ of error [the] final decision in the District Court and the existing Circuit Courts in all cases other than those provided for in the preceding section of this act, unless otherwise provided by law, and the judgments or de-

crees of the Circuit Courts of Appeals shall be final in all cases
in which the jurisdiction is dependent entirely upon the oppo-
site parties to the suit or controversy being aliens and citizens
of the United States or citizens of different States; also, in all
cases arising under the patent laws, under the revenue laws,
and under the criminal laws, and in admiralty cases, excepting
that in every such subject within its appellate jurisdiction the
Circuit Court of Appeals at any time may certify to the Su-
preme Court of the United States any questions or propositions
of law concerning which it desires the instruction of that court
for its proper decision.   And thereupon the Supreme Court
may either give its instruction on the questions and proposi-
tions certified to it, which shall be binding upon the Circuit
Courts of Appeals in such case, or it may require that the whole
record and cause may be sent up to it for its consideration, and
thereupon shall decide the whole matter in controversy in the
same manner as if it had been brought there for review by writ
of error or appeal.

"And excepting also that in any such case as is hereinbefore
made final in the Circuit Court of Appeals it shall be competent
for the Supreme Court to require, by certiorari or otherwise,
any such case to be certified to the Supreme Court for its review
and determination with the same power and authority in the
case as if it had een carried by appeal or writ of error to the
Supreme Court.

"In all cases not hereinbefore, in this section, made final
there shall be of right an appeal or writ of error or review of the
case by the Supreme Court of the United States where the
matter in controversy shall exceed one thousand dollars be-
sides costs."   26 Stat. 826, c. 517.

This suit was cognizable by the Circuit Court under the
Judiciary Act of 1887-8, as one arising under both the Con-
stitution and the laws of the United States.   25 Stat. 433,
c. 866.   It arose under the Constitution, because the plaintiff's
cause of action, as disclosed in its Statement of Demand, has
its sanction in that instrument, if it be true, as alleged, that

the act of 1898, under which the defendant proceeded, when collecting the taxes in question, is repugnant to the Constitution. And it arose under the laws of the United States because it arose under a statute providing for internal revenue. By section 629, subdivision 4, of the Revised Statutes, the Circuit Courts, without regard to the citizenship of the parties, may take original cognizance of suits arising under a law of that character. That provision has not been superseded by the Judiciary Act of 1887–8. See also Rev. Stat. §§ 3220, 3226.

Was the judgment of the Circuit Court subject to review only by this court, or was it permissible for the plaintiff to take it to the Circuit Court of Appeals? If the case, as made by the plaintiff's Statement, had involved no other question than the constitutional validity of the act of 1898, or the construction or application of the Constitution of the United States, this court alone would have had jurisdiction to review the judgment of the Circuit Court. *Huguley Mfg. Co.* v. *Galeton Cotton Mills*, 184 U. S. 290, 295. But the case distinctly presented other questions which involved simply the construction of the act; and those questions were disposed of by the Circuit Court at the same time it determined the question of the constitutionality of the act. If the case had depended entirely on the *construction* of the act of Congress—its constitutionality not being drawn in question—it would not have been one of those described in the fifth section of the act of 1891, and, consequently, could not have come here directly from the Circuit Court. As, then, the case, made by the plaintiff, involved a question other than those relating to the constitutionality of the act and to the application and construction of the Constitution, the Circuit Court of Appeals had jurisdiction to review the judgment of the Circuit Court, although if the plaintiff had elected to bring it here directly, this court would have had jurisdiction to determine all the questions arising upon the record. The plaintiff was entitled to bring it here directly from the Circuit Court, or, at its election, to go to the Circuit Court of Appeals for a review of the whole case. Of course,

the plaintiff, having elected to go to the Circuit Court of Appeals for a review of the judgment, could not thereafter, if unsuccessful in that court upon the merits, prosecute a writ of error directly from the Circuit Court to this court. *Robinson* v. *Caldwell,* 165 U. S. 359; *Loeb* v. *Columbia Township Trustees,* 179 U. S. 472; *Ayers* v. *Polsdorfer,* 187 U. S. 585.

It remains to inquire whether the judgment of the Circuit Court of Appeals was so far final, within the meaning of the sixth section of the act of 1891, that it could not be reviewed here as of right upon writ of error. Can the judgment of that court in this case be reëxamined here in any way except upon writ of certiorari granted by this court? The Government insists that it cannot, because the case—to use the words of the sixth section of the act of 1891—is one "arising . . . under the revenue laws." So far as we now remember, this precise point has not heretofore arisen for our determination. Looking at the purpose and scope of the act of 1891, we are of opinion that the position of the Government on this point cannot be sustained. It rests upon an interpretation of the act that is too technical and narrow. The meaning of the words "arising . . . under the revenue laws," in the sixth section, is satisfied if they are held as embracing a case strictly arising under laws providing for internal revenues and which does not, by reason of any question in it, belong also to the class mentioned in the fifth section of that act. We do not think that the words quoted necessarily embrace a case carried to the Circuit Court of Appeals, which, although arising under the revenue laws, and involving a *construction* of those laws, depends for a full determination of the rights of the parties upon the construction or application of the Constitution, or upon the constitutionality of an act of Congress. We lean to that interpretation of the act which enables the defeated party in such a case in the Circuit Court of Appeals to have, as of right, upon writ of error to that court, a reëxamination here of the judgment (the requisite amount being involved) if the correctness of the judgment depends in whole or in part upon

the application or construction of the Constitution, or upon the constitutionality of any act of Congress drawn in question.

What we have said is in harmony with our former decisions; although the precise point here was not involved in any of them. In *American Sugar Company* v. *New Orleans*, 181 U. S. 277, 280, 281, it was said: "It was held in *Loeb* v. *Columbia Township Trustees*, 179 U. S. 472, where the jurisdiction of the Circuit Court rested on diverse citizenship, but the state statute involved was claimed in defence to be in contravention of the Constitution of the United States, that a writ of error could be taken directly from this court to revise the judgment of the Circuit Court, although it was also ruled that the plaintiff might have carried the case to the Circuit Court of Appeals, and that if a final judgment were rendered by that court against him, he could not thereafter have invoked the jurisdiction of this court directly on another writ of error to review the judgment of the Circuit Court. . . . If plaintiff, by proper pleading, places the jurisdiction of the Circuit Court on diverse citizenship, and *also on grounds independent of that,* a question expressly reserved in *Colorado Central Mining Company* v. *Turck*, 150 U. S. 138, and the case is taken to the Court of Appeals, propositions as to the latter grounds may be certified, or, if that course is not pursued and the case goes to judgment, (and the power to certify assumes the power to decide,) an appeal or writ of error would lie under the last clause of section six, because the jurisdiction would not depend solely on diverse citizenship. *Union Pacific Railway Company* v. *Harris*, 158 U. S. 326." In *Huguley Manufacturing Company* v. *Galeton Cotton Mills*, 184 U. S. 290, 295, it was said: "If after the jurisdiction of the Circuit Court attaches on the ground of diversity of citizenship, issues are raised, the decision of which brings the case within either of the classes set forth in section five, then the case may be brought directly to this court; although it may be carried to the Circuit Court of Appeals, in which event the final judgment of that court could not be brought here as of right. *Loeb* v. *Columbia Trustees*,

179 U. S. 472. If the jurisdiction of the Circuit Court rests solely on the ground that the suit arises under the Constitution, laws or treaties of the United States, then the jurisdiction of this court is exclusive, but if it is placed on diverse citizenship, and *also on grounds independent of that,* then if carried to the Court of Appeals, the decision of that court would not be made final, and appeal or writ of error would lie. *American Sugar Company* v. *New Orleans,* 181 U. S. 277. . . . The ground on which the jurisdiction of the Circuit Court was invoked was solely diversity of citizenship, and the record does not show anything to the contrary, so that the decree of the Circuit Court of Appeals cannot be regarded otherwise than as made final by the statute."

Now, as the judgment of the Circuit Court of Appeals may be brought to this court, as of right, where the jurisdiction of the Circuit Court rested upon the diversity of citizenship, and also upon grounds that would bring the case within section five of the act of 1891, it must be held that the judgment of the Circuit Court of Appeals is not final, within the meaning of the sixth section, in a case which, although arising under a law providing for internal revenue and involving the construction of that law, is yet a case also involving, from the outset, from the plaintiff's showing, the construction or application of the Constitution or the constitutionality of an act of Congress.

For the reasons stated we hold that the plaintiff was entitled, of right, to a writ of error for the review by this court of the judgment of the Circuit Court of Appeals.

Coming now to the merits of the case, we first notice the contention of the plaintiff that the twenty-seventh section of the act of 1898 imposes a direct tax in violation of the constitutional provision relating to the apportionment of taxes of that kind among the several States.

The above section of the act of 1898 is as follows: "Sec. 27. That every person, firm, corporation, or company carrying on or doing the business of refining petroleum, or refining sugar, or owning or controlling any pipe line for transporting oil or

other products, whose gross annual receipts exceed two hundred and fifty thousand dollars, shall be subject to pay annually a special excise tax equivalent to one-quarter of one per centum on the gross amount of all receipts of such persons, firms, corporations, and companies in their respective business in excess of said sum of two hundred and fifty thousand dollars.

"And a true and accurate return of the amount of gross receipts as aforesaid shall be made and rendered monthly by each of such associations, corporations, companies, or persons to the collector of the district in which any such association, corporation or company may be located, or in which such person has his place of business. Such return shall be verified under oath by the person making the same, or, in case of corporations, by the president or chief officer thereof. Any person or officer failing or refusing to make return as aforesaid, or who shall make a false or fraudulent return, shall be liable to a penalty of not less than one thousand dollars and not exceeding ten thousand dollars for each failure or refusal to make return as aforesaid and for each and every false or fraudulent return."

The contention of the Government is that the tax is not a direct tax, but only an excise imposed by Congress under its power to lay and collect excises which shall be uniform throughout the United States. Art. I, § 8. Clearly the tax is not imposed upon gross annual receipts as property, but only in respect of the carrying on or doing the business of refining sugar. It cannot be otherwise regarded because of the fact that the amount of the tax is measured by the amount of the gross annual receipts. The tax is defined in the act as "a special excise tax," and, therefore, it must be assumed, for what it is worth, that Congress had no purpose to exceed its powers under the Constitution, but only to exercise the authority granted to it of laying and collecting excises.

This general question has been considered in so many cases heretofore decided that we do not deem it necessary to consider it anew upon principle. It was held in *Pacific Insurance Co. v. Soule,* 7 Wall. 433, that the income tax imposed by the

internal revenue act of June 30, 1864, amended July 13, 1866, 13 Stat. 223, 14 Stat. 98, on the amounts insured, renewed and continued by insurance companies, on the gross amount of premiums received, on dividends, undistributed sums and income, was not a direct tax, but an excise duty or tax within the meaning of the Constitution; in *Veazie Bank* v. *Fenno*, 8 Wall. 533, that the statute then before the court, which required national banking associations, state banks or state banking associations to pay a tax of ten per centum on the amount of state bank notes paid out by them, after a named date, did not in the sense of the Constitution impose a direct tax, but was to be classed under the head of duties, which were to be sustained upon the principles announced in *Pacific Insurance Co.* v. *Soule,* above cited; in *Scholey* v. *Rew*, 23 Wall. 331, that the tax imposed on every devolution of title to real estate was not a direct tax but an impost or excise, and was, therefore, constitutional; in *Nicol* v. *Ames*, 173 U. S. 509, that the tax imposed (30 Stat. 448) upon each sale or agreement to sell any products or merchandise at an exchange, or board of trade, or other similar place, either for present or future delivery, was not in the constitutional sense a direct tax upon the business itself, but in effect "a duty or excise law upon the privilege, opportunity or facility offered at boards of trade or exchanges for the transaction of the business mentioned in the act," which was "separate and apart from the business itself;" in *Knowlton* v. *Moore*, 178 U. S. 41, 81, that an inheritance or succession tax was not a direct tax on property, as ordinarily understood, but an excise levied on the transmission or receipt of property occasioned by death; and, in *Patton* v. *Brady*, 184 U. S. 608, that the tax imposed by the act of June 13, 1898, upon tobacco, however prepared, manufactured and sold, for consumption or sale, was not a direct tax, but an excise tax which Congress could impose; that it was not "a tax upon property as such but upon certain kinds of property, having reference to their origin and intended use."

In view of these and other decided cases, we cannot hold that

the tax imposed on the plaintiff expressly with reference to its "carrying on or doing the business of . · . refining sugar," and which was to be measured by its gross annual receipts in excess of a named sum, is other than is described in the act of Congress, a special excise tax, and not a direct one to be apportioned among the States according to their respective numbers. This conclusion is inevitable from the judgments in prior cases, in which the court has dealt with the distinctions, often very difficult to be expressed in words, between taxes that are direct and those which are to be regarded simply as excises. The grounds upon which those judgments were rested need not be restated or reëxamined. It would subserve no useful purpose to do so. It must suffice now to say that they clearly negative the idea that the tax here involved is a direct one, to be apportioned among the States according to numbers.

It is said that if regard be had to the decision in the *Income Tax Cases,* a different conclusion from that just stated must be reached. On the contrary, the precise question here was not intended to be decided in those cases. For, in the opinion on the rehearing of the *Income Tax Cases* the Chief Justice said: "We have considered the act only in respect of the tax on income derived from real estate, and from invested personal property, and have not commented on so much of it as bears on gains or profits from business, privileges or employments, in view of the instances in which taxation on business, privileges or employments has assumed the guise of an excise tax and been sustained as such." 158 U. S. 601.

The question of the constitutionality of the act having been disposed of, we turn our attention to the questions involving its construction merely.

As already stated, the judgment of the Circuit Court determined certain questions for the plaintiff. But as the Government did not prosecute a writ of error to the Circuit Court of Appeals those questions cannot be examined here, and we can only consider such points, on the merits of the case, as are raised by the plaintiff's assignments of error.

It was in proof that the plaintiff owned three wharves on the Delaware River, at which vessels landed, and for the use of which those vessels paid wharfage according to the rates prescribed by a general tariff.   A large part, nearly all, of the sugar refined by the plaintiff was brought into the port of Philadelphia by vessels which came to those wharves, and such vessels paid wharfage according to that tariff.   Many vessels brought raw sugar which the Refining Company had purchased abroad.   The wharves were built by the plaintiff for the purpose of transacting any business that it might have or for which it saw fit to use them.   And nearly all the business done at that time at the wharves was the unloading of sugar consigned to the plaintiff.   The exceptions were too few to be regarded as material.   Upon its receipts from such wharfage, the plaintiff had been compelled to pay a tax.   Was it required by the act to pay a tax upon receipts of profits from that source?   In other words, were the receipts from wharfage properly included in plaintiff's gross annual receipts upon which the amount of the prescribed tax was to be computed?

On this question the Circuit Court said: "Scarcely any vessels lie at those wharves except the vessels that bring raw sugar to the plaintiff, and the wharves are used for the convenience and greater profit of the corporate enterprise.   The money paid by the vessels for wharfage is, I think, a receipt for the business."   The view of the Circuit Court of Appeals was thus expressed: "The use which the plaintiff really made of its wharves was in 'carrying on or doing the business of . . . refining sugar.'   They were part of the plant of that business, and, as it was actually conducted, they were an essential condition of it.   Consequently their receipts were its receipts, and as such they were properly comprised in the assessment.   *Adams Express Company* v. *Ohio State Auditor*, 165 U. S. 194."

This question is not wholly free from difficulty.   But we think the better reason is with the ruling in the Circuit Court and in the Circuit Court of Appeals, to the effect that the

wharves, in every substantial sense, constituted a part of the plaintiff's "plant" and, if not absolutely necessary, were of great value, in the prosecution of its business; and that receipts derived by plaintiff from the use of the wharves by vessels—particularly because, with rare exceptions, the vessels using them brought to the plaintiff the raw sugar which it refined—were receipts in its business of refining sugar. The primary use of the wharves was in connection with and in the prosecution of that business. The importation of raw sugar from abroad was not, in any proper sense, a separate business, but an essential part of the plaintiff's general business of refining sugar. The wharves were part of the instrumentalities and conveniences employed by plaintiff for the successful management and conduct of its business of refining sugar. Without the wharves the gross amount of receipts and profits from such business would probably have been less than they were in fact. If the receipts from the use of the wharves were reasonably to be deemed receipts in the plaintiff's business of refining sugar, as we think they were, then they were properly treated as a part of its gross annual receipts, upon which, in excess of the sum of $250,000, the tax in question was rightly imposed.

The remaining assignment of error relates to the including in the plaintiff's gross annual receipts of interest paid to it upon deposits in bank and dividends received by it upon shares of stock in other companies. Upon this point Judge McPherson, holding the Circuit Court, said: "This interest, I think, was properly included by the Collector in determining the annual value of the business. It was corporate property, presumably used for corporation purposes, and was as much engaged in the business of refining as the capital invested in machinery or raw materials." Judge Dallas, with whom concurred Judge Acheson, delivering the judgment of the Circuit Court of Appeals, said: "The interest received by the plaintiff upon its corporate funds, either deposited in bank or invested in income producing securities, was also rightly included. The special

verdict states that it was 'interest upon its investments of moneys and property as explained by the testimony of Mr. Ball,' and it appears from that testimony that the only business of the plaintiff was sugar refining, and that this interest was received by it upon investments or deposits of such part of the capital of that business as at the time being was not in active use therein. Mr. Ball, it is true, also testified that it did not have anything to do with sugar refining, but the question for our decision is, not whether this interest was derived from the refining of sugar, which of course it was not, but whether or not it was received in the *business* of sugar refining, and upon this very different question the facts found are conclusive. The funds of the corporation, however any portion of them may have been temporarily applied or held, were all embarked in the sugar refining business, and to it, therefore, all receipts which those funds produced necessarily belonged. Any diminution of them would certainly have been its loss, and it seems to be equally clear that their augmentation, however occasioned, must have been its gain. Except in connection with and as incidental to that business, the plaintiff was neither an investor nor a depositor, and therefore, by becoming either the one or the other, it did not engage in an additional and separate business." Judge Gray, dissenting, said: "Keeping in mind the well settled rule, that the citizen is exempt from taxation, unless the same is imposed by clear and unequivocal language, and that where the construction of a tax is doubtful, the doubt is to be resolved in favor of those upon whom the tax is sought to be laid, I cannot assent to the affirmance of the judgment of the court below in this respect. I do not think that the income derived from such investment of funds is in any proper sense a receipt in the business of sugar refining. The very term 'gross receipts' in 'the business,' would seem to exclude all such receipts as the interest upon investments here referred to."

We are of opinion that upon the point last stated there was error. The gross annual receipts, upon which, in excess of a

SPRECKELS SUGAR REFINING CO. *v.* McCLAIN. 417

192 U. S.     Opinion of the Court.

certain amount, the tax was imposed, were, under the statute, only receipts in the business of refining sugar, not receipts from independent sources. But, clearly, neither interest paid to the plaintiff on its deposits in bank, nor dividends received by it from investments in the stocks of other companies, were receipts in the business of refining sugar. The moneys deposited by the plaintiff in bank were, we assume, on this record, the profits it had earned in the business in which it was engaged. Profits did not necessarily remain in the business; and whether they would be divided among stockholders or be used in the further prosecution of the business was for the plaintiff to determine. They could have been used for purposes wholly distinct from the business of refining sugar. We are of opinion that the receipts by the plaintiff of interest on its bank deposits had no necessary relation to the business of refining sugar, but rested wholly upon some agreement or understanding between the bank and the depositor, which had no direct connection with that business. And the same thing may be said of plaintiff's investment of its moneys in the stocks of other companies. In the absence of any showing to the contrary, it must be assumed that the declaration or the receipt of dividends on such stocks was wholly apart from the particular business in which the holder of the stock was engaged.

We hold that in the matter of interest received by the plaintiff on deposits in bank, as well as in the matter of dividends received by it on stocks in other companies, the judgments of both the Circuit Court and the Circuit Court of Appeals were erroneous.

The judgment of each court is reversed and the cause is remanded for such further proceedings as may be necessary for the correction of the errors hereinbefore specified, and as may be in conformity with this opinion.

*It is so ordered.*

The Chief Justice: Mr. Justice Brown and myself are of opinion that the judgment of the Circuit Court of Appeals in

this case was made final in that court by the Judiciary Act of
March 3, 1891, and that, therefore, the writ of error should be
dismissed.