## LIGGETT & MYERS TOBACCO CO., Inc., v. UNITED STATES.

### No. 5517.

Circuit Court of Appeals, Third Circuit.

Feb. 26, 1935.

Henry J. Melosh, of Jersey City, N. J. (Richard S. Holmes, of New York City, of counsel), for appellant.

Frank J. Wideman, Asst. Atty. Gen., and E. E. Angevine and Sewall Key, Sp. Assts. to Atty. Gen., for the United States.

Before WOOLLEY, DAVIS, and THOMPSON, Circuit Judges.

WOOLLEY, Circuit Judge.

The tax laws on whose construction this case turns are sections 1002 and 1005 of the Revenue Act of 1918, c. 18, 40 Stat. 1057, and section 3385 of the Revised Statutes. The first two sections provide (1002) that after a certain date there shall be assessed, levied and paid annually in lieu of certain taxes "the following special taxes, the amount of such taxes to be computed on the basis of the sales for the preceding year ending June 30—* * * Manufacturers of cigarettes * * * at the rate of 6 cents for every ten thousand cigarettes"; and (1005) "That any person who carries on any business or occupation for which a special tax is imposed by sections 1000, 1001, or 1002, without having paid the special tax therein provided" shall be punished by fine or imprisonment.

The last section (3385, Rev. St.) prescribes that "Manufactured tobacco (which includes cigarettes, section 3387, Rev. St.) intended for immediate exportation, may (after the manufacturer has conformed to regulations prescribed by the Commissioner of Internal Revenue) be removed from the manufactory in bond without having affixed thereto stamps indicating the payment of the tax thereon."

Clause 5 of section 9 of article 1 of the Constitution provides: "No Tax or Duty shall be laid on Articles exported from any State."

The Liggett & Myers Tobacco Company was a manufacturer of cigarettes in the United States. It sold them in domestic trade and in foreign countries. On July 1, 1921, W. Duke Sons & Company, its branch establishment at Durham, North Carolina, filed, as a manufacturer of cigarettes, its return for the special tax under the cited section 1002 disclosing the number of cigarettes it had manufactured and sold during the year ended June 30, 1921, upon which the

tax was based and also the number it had removed in bond in conformity with section 3385 of the Revised Statutes and had sold in foreign countries. The total amount of the tax shown by the return to be due, and thereafter assessed, was $28,389.24, of which the sum of $223.28 was the amount assessed in respect to cigarettes exported and sold abroad.

The Tobacco Company on demand of a collector of internal revenue paid the full amount of the tax, claimed a refund of the item of $223.28, which was refused by the Commissioner of Internal Revenue, and then brought this suit for its recovery. At the trial the learned district judge, on findings of fact which are not assailed, found for the government on the law. The Tobacco Company appealed, assigning error in the court's conclusions of law and in its refusal to make opposite conclusions.

The 'question which was before the District Court and is here for review is whether the tax imposed by section 1002 of the Revenue Act of 1918 upon manufacturers of cigarettes is a tax on exports to the extent of the number of cigarettes exported and sold in foreign countries and therefore contravenes the provision of clause 5, § 9 of article 1, of the Constitution and is in conflict with section 3385 of the Revised Statutes.

The appellant takes the position that the section of the act in question (1002) imposes a tax on sales and therefore to the extent cigarettes are exported it is a tax on exports. It is evident from the earnestness of the appellant's argument that if only it can persuade this court, in construing the Act, to concede its premise that the tax is on sales, its legal syllogism will be sound and the suit must be resolved in its favor. To this end it argues that, although the Act in words imposes the tax upon the manufacturer of cigarettes and although, confessedly, it is in form an occupational tax or a tax for the privilege of engaging in the business of manufacturing cigarettes, the tax in substance and effect is on the sale of cigarettes and when tested by its operation and effect the Act is unconstitutional in respect to products exported and sold, under authority of Brown v. Maryland, 12 Wheat. 419, 445, 6 L. Ed. 678; Near v. Minnesota, 283 U. S. 697, 51 S. Ct. 625, 75 L. Ed. 1357; Wagner v. Covington, 251 U. S. 95, 102, 104, 40 S. Ct. 93, 64 L. Ed. 157, 168; Indian Motocycle Co. v. United States, 283 U. S. 570, 51 S. Ct. 601, 75 L. Ed. 1277; Hart Refineries v. Harmon, 278 U. S. 499, 500, 49 S. Ct. 188, 73 L. Ed. 475; Crew Levick Co. v. Pennsylvania, 245 U. S. 292, 38 S. Ct. 126, 62 L. Ed. 295; Panhandle Oil Co. v. Mississippi, 277 U. S. 218, 48 S. Ct. 451, 72 L. Ed. 857, 56 A. L. R. 583. Some of these cases, particularly the Indian Motocycle and Panhandle Cases on which the appellant strongly relies, concern the constitutionality of tax legislation which affects instrumentalities of government and therefore have little perceptible relation to the question in hand which, conceding the power of the government to impose taxes upon manufacturing, is directed to the legal inquiry whether the tax imposed is, in truth, on manufacturing cigarettes or on selling them in export trade.

Turning to the statute, it is plain that in form the tax is an occupational tax. It is a "special tax" imposed upon certain persons, among them "manufacturers of cigarettes," section 1002, who are forbidden to carry on "any business or *occupation for which a special tax is imposed* by sections 1000, 1001, or 1002, without having paid the special tax therein provided." Section 1005. Though the tax imposed upon the maker of the product is "computed on the basis of the sales for the preceding year," it is clear that the tax is not imposed upon the product, nor is it imposed upon the sale of the product, unless one is forced to an opposite conclusion by its "operation and effect."

In looking for the operation and effect of the Act which taxes manufacturers of cigarettes, it may be accepted as an evident fact that no one would manufacture cigarettes unless he intended to sell them. In some instances, as in this case, the manufacturer may sell them both at home and abroad. That he may be taxed for the privilege of manufacturing cigarettes is not questioned. Whether the tax for this privilege extends to the sale of the product and, when sales are made in export trade, runs counter to the constitutional provision against laying a tax "on articles exported" must be determined by the canons that govern the construction of the Constitution. In this regard the Supreme Court announced in Cornell v. Coyne, 192 U. S. 418, 427, 24 S. Ct. 383, 384, 48 L. Ed. 504, that: "The true construction of the constitutional provision [here in question] is that no burden by way of tax or duty can be cast upon the exportation of articles, and does not mean that articles exported are relieved from the prior ordinary burdens of taxation which rest upon all property similarly situated. The exemp-

tion attaches to the export, and not to the article before its exportation."

The tax in question applies uniformly to manufacturers of cigarettes whether the products be sold for domestic consumption or for export. It is, we hold, a plain occupational tax imposed upon the manufacturer without reference to the sale or place of sale of the manufactured products. Being measured by sales in the preceding year, it is imposed before sales are made in the taxable year, that is, "before exportation." Being in a true sense an "ordinary" tax, it affects sales of cigarettes only after the tax for manufacturing them has, like local taxes, been paid. Thus it affects exportation only indirectly and, we think, is too remote to be regarded as a tax on exports.

We have been persuaded by the reasoning of the District Court in Anargyros v. Edwards, 22 F.(2d) 707, involving the same taxing act, and the Circuit Court of Appeals for the Second Circuit in reviewing the same case, 26 F.(2d) 319, and by the decisions in Cornell v. Coyne, 192 U. S. 418, 24 S. Ct. 383, 48 L. Ed. 504; Flint v. Stone Tracy Co., 220 U. S. 107, 31 S. Ct. 342, 55 L. Ed. 389, Ann. Cas. 1912B, 1312; Spreckels Sugar Refining Co. v. McClain, 192 U. S. 397, 24 S. Ct. 376, 48 L. Ed. 496; Peck & Co. v. Lowe, 247 U. S. 165, 38 S. Ct. 432, 62 L. Ed. 1049; United States Glue Co. v. Oak Creek, 247 U. S. 321, 38 S. Ct. 499, 62 L. Ed. 1135, Ann. Cas. 1918E, 748; National Paper & Type Co. v. Bowers, 270 U. S. 630, 46 S. Ct. 335, 70 L. Ed. 770, that the Act in question is not unconstitutional when applied to the facts of this case.

The remaining question is whether the Act is invalid because inconsistent with section 3385 of the Revised Statutes. That provision concerns the removal of manufactured tobacco in bond for export. It does not impose a tax. Rather it provides means whereby articles intended for export may be relieved of a tax. Of course, being the older law, it does not expressly grant, nor does it by broad and general terms even imply, relief from paying a special tax such as that imposed upon a manufacturer of cigarettes by the Act in question. Quite the contrary, it specifically names the kind of tax for which relief is accorded in case of intended exportation of products as that whose payment is indicated by stamps affixed thereon. Payment of the special tax in question is made to a collector of internal revenue and is not indicated by stamps at-

tached to the articles intended to be exported.

Subscribing to the conclusions of law reached by the learned district judge that the tax in the sum of $223.28 was not assessed and collected in violation of the cited constitutional provision, that it was not assessed and collected in violation of section 3385 of the Revised Statutes, and that the same was in all respects lawfully assessed and collected, the judgment of the District Court is affirmed.