## DAVIS v. EDISON ELECTRIC ILLUMINATING CO. OF BOSTON et al.

### No. 3221.

Circuit Court of Appeals, First Circuit.

April 14, 1937.

Edward F. McClennen, of Boston, Mass. (Jacob J. Kaplan, of Boston, Mass., on the brief), for appellant.

Robert H. Jackson, Asst. Atty. Gen. (Stanley Reed, Sol. Gen., James W. Morris, Asst. Atty. Gen., Sewall Key, Paul Freund, J. P. Jackson, F. A. LeSourd, and Arnold Raum, Sp. Assts. to the Atty. Gen., Thomas N. Eliot, Gen. Counsel, Social Security Board, and Alanson W. Willcox, Asst. Gen. Counsel, Social Security Board, both of Washington, D. C., on the brief), for appellees Commissioner of Internal Revenue et al.

Before BINGHAM, WILSON, and MORTON, Circuit Judges.

WILSON, Circuit Judge.

This is a bill in equity brought by a stockholder of the defendant company seeking to enjoin the defendant from paying the tax imposed on it by section 804 of title VIII of chapter 531, 49 Stat. 620, 637 (42 U.S.C.A. § 1004), known as the Social Security Act, on the ground that the tax is not one authorized by section 8 of article 1 of the Constitution of the United States, that the act infringes the rights of the states, and imposes a capricious and arbitrary burden on those whom it affects.

The District Court of Massachusetts held sections 801 and 804 of title VIII (42 U.S.C.A. §§ 1001, 1004) were valid exercises of powers of Congress within the field of federal authority, and that the funds collected from such taxes go into the Treasury of the United States and are there subject to such appropriations as Congress sees fit to make, since they are not "earmarked" as collected for any particular purpose, and therefore a taxpayer cannot object to an action by Congress in appropriating funds in the United States Treasury.

The plaintiff appealed and assigned as errors that the District Court erred in holding that the plaintiff had no standing to question the validity of the tax imposed by section 801, and that the District Court erred in holding that section 804 imposed a valid excise tax on the defendant.

It is contended by the government that, whatever is decided with reference to the validity of the tax on employers under section 804, the tax on the employees under section 801 is a valid income tax. Standing alone it may well be, but whether it can be considered as within the intent of Congress that it shall be enforced if the other features of title VIII (section 801 et seq. [42 U.S.C.A. § 1001 et seq.]) are held invalid or must fall with the tax on the employers, may well be questioned.

The government also contends that title VIII has no direct relation to title II (section 201 et seq. [42 U.S.C.A. § 401 et seq.]) or, if so, title II of the act is a valid exercise of the power of Congress to appropriate money in the treasury for any purpose it may deem for the general welfare of the United States.

The assistance of those incapacitated by age from earning a livelihood is one of the powers belonging to, and burdens imposed on, the states at the time of the adoption of the Federal Constitution. If so, the power to deal with it was expressly reserved to them under the Tenth Amendment. It is not to be lightly assumed that the several states whose governments are much closer to their people than Congress is, have failed in this duty as their people see it. But, even if they have and Congress is right in its view that the aged are entitled to more definite and more generous assistance than they have received from the several states, the failure of the states (in the opinion of Congress) would not operate to extend the power of the federal government over this distinctly state field. The principle involved in the argument for the government, although it is not so stated, is that in any field reserved to the states, in respect to which in the opinion of Congress the states are not doing their duty, it may step in and take the matter out of their hands under the "general welfare" clause. It was not denied by counsel for the government that Congress could, if it saw fit, take over general education in the same indirect way, by establishing its Board of Education and taxing heavily the states whose systems did not conform to the ruling of the Board. Obviously, this principle, if accepted, marks the end of responsible state government. We are not unmindful of the argument that the increasing unification of the country in economic and industrial fields and the competition among the states to extend their industries make the states reluctant to impose burdens for old age assistance which would handicap their industries, and that the matter should therefore be dealt with by the federal government, thereby equalizing such burdens throughout the country. The argument applies to many other aspects of daily life besides old age assistance. There are those who urge that our frame of government should be greatly revised. Such considerations are plainly not for the courts. Their duty is to enforce the stated boundaries between the federal and the state governments as they now exist. They have not hesitated, for instance, to strike down state laws which interfered with the federal power over interstate commerce. It is equally their duty to strike down federal laws which interfere with the power of the states.

It is true that the plaintiff's bill as drawn raises no issue as to the validity of

title II, nor does title VIII in any way refer to the provisions of title II as indicating the purposes for which the taxes under title VIII are imposed. If title II bears no relation to the provisions of title VIII, then it may be that the plaintiff has no standing to question the validity of title II under Massachusetts v. Mellon (Frothingham v. Mellon), 262 U.S. 447, 43 S.Ct. 597, 67 L.Ed. ·1078; but there are indications in both title II and title VIII, when taken together, that the taxes imposed under sections 801 and 804 of title VIII (42 U.S.C.A. §§ 1001, 1004), while not earmarked in the sense counsel for the government contends, are to be construed together. Both titles are a part of an act entitled:

"An Act To provide for the general welfare by establishing a system of Federal old-age benefits, and by enabling the several States to make more adequate provision for aged persons, blind persons, dependent and crippled children, maternal and child welfare, public health, and the administration of their unemployment compensation laws; to establish a Social Security Board; to raise revenue; and for other purposes." 49 Stat. 620.

It is apparent from the language of sections 202 and 210 of title II (42 U.S.C.A. §§ 402, 410) and section 811 of title VIII (42 U.S.C.A. § 1011) that it was the intent of Congress that the taxes raised in sections 801 and 804 of title VIII (42 U.S.C.A. §§ 1001, 1004) were imposed for the express purpose of paying the old age benefits provided for in title II. It is not within reason to suppose that Congress would by section 801 of title VIII compel employees to give up 3 per cent. of their earnings, if it were not contemplated that it would insure them the benefits provided for in title II.

We think that the power to provide for "old age benefits" was among those powers reserved to the states under the Tenth Amendment, and that a tax imposed to benefit slightly over half of the people over sixty-five years of age and who are the care or burden of the states cannot be said to be imposed for the general welfare of the United States and the taxes under title VIII would fail for this reason.

■ Following the reasoning of our opinion in the recent case of George P. Davis v. Boston & Maine Railroad Company, 89 F.(2d) 368, we think the tax imposed with respect to having individuals in one's employ cannot be upheld as an excise tax authorized under section 8 of article 1 of the Constitution, for the reason stated in the opinion in that case, since it was a tax on the natural and ·common right of employing labor, and is not a tax on property manufactured, sold, or in use, or on a privilege granted by any government, and was not within the purview of the framers of the Constitution or the people in adopting it.

The power vested in Congress under section 8 of article 1 of the Constitution is undoubtedly a broad power and covers a wide range of taxable subjects, but that it was intended by those adopting the Constitution that it should reach every possible relation between employer and employee was a subject for taxation we cannot agree. Certain particular vocations in which the public may have an interest, such as attorneys, innkeepers, or auctioneers, may be subject to excise taxes, as was said in Thomas v. United States, 192 U.S. 363, 24 S.Ct. 305, 48 L.Ed. 481; but the right to employ labor in ordinary business is not a commodity or a privilege that is subject to a tax. Congress may tax the right to do certain kinds of business, or corporations holding a franchise from a state, based on their income, as in the case of Spreckels Sugar Refining Co. v. McClain, 192 U.S. 397, 24 S.Ct. 376, 48 L.Ed. 496; Flint v. Stone Tracy Co., 220 U.S. 107, 31 S.Ct. 342, 55 L.Ed. 389, Ann.Cas.1912B, 1312. It has never been held, however, either by the Supreme Court of the United States, or the Supreme Court of any state, so far as we are advised, that Congress had the power to tax the common right to employ labor. It is like taxing a person's right to work.

Such a levy was held not to be within the taxing power of the Canadian Parliament. Canada Law Reports, 1036, Part VII, p. 454. In effect, it was held in this case that employment of labor was not a privilege derived from the Canadian government, and an excise tax on the right to employ was beyond the powers of the Canadian Parliament and invalid.

In the case of James v. Commonwealth of Australia, 1936, A.C. 578, in which the British Privy Council held that an act of the commonwealth of Australia to control and limit the products of agriculture was unconstitutional, Lord Wright, Master of the Rolls, said:

396

"But these inconveniences are liable to flow from a written constitution. Their Lordships cannot arrive at any conclusion save that they could not give effect to the respondents' contention consistent with any construction of the constitution which is in accord with sound principles of interpretation. To give that effect would amount to rewriting, not construing, the constitution. That is not their Lordships' function."

The limitation upon the power to impose excise taxes was well stated in the Opinion of the Justices in 247 Mass. 589, 593, 143 N.E. 808, 810:

"The right to set up and maintain theaters and other places of amusement is not natural and inherent. Working by an artisan at his trade, carrying on an ordinary business, or engaging in a common occupation or calling cannot be subjected to a license fee or excise."

Again, on page 597 of 247 Mass., 143 N. E. 808, 811, the Justices said:

"The rights to labor and to do ordinary business are natural, essential, and inalienable, partaking of the nature both of personal liberty and of private property."

If Congress can tax the common right to employ labor and appropriate the money so collected to any object it sees fit, however it may concern the domestic affairs of the States, and the courts are powerless under the decision in Massachusetts v. Mellon (Frothingham v. Mellon), 262 U.S. 447, 43 S.Ct. 597, 67 L.Ed. 1078, the States will soon, under the policy of recent Congresses, be reduced to mere "geographical subdivisions of the national domain."

" 'The Constitution, in all its provisions, looks to an indestructible Union, composed of indestructible States.' Every journey to a forbidden end begins with the first step; and the danger of such a step by the federal government in the direction of taking over the powers of the states is that the end of the journey may find the states so despoiled of their powers, or—what may amount to the same thing—so relieved of the responsibilities which possession of the powers necessarily enjoins, as to reduce them to little more than geographical subdivisions of the national domain. It is safe to say that if, when the Constitution was under consideration, it had been thought that any such danger lurked behind its plain words, it would nev-

er have been ratified." Carter v. Carter Coal Co., 298 U.S. 238, 295, 56 S.Ct. 855, 865, 866, 80 L.Ed. 1160.

"It is not the province of the Court to consider the economic advantages or disadvantages of such a centralized system. It is sufficient to say that the Federal Constitution does not provide for it." Schechter Poultry Corp. v. United States, 295 U.S. 495, 55 S.Ct. 837, 851, 79 L.Ed. 1570, 97 A.L.R. 947.

The recent legislation of the so-called National Recovery Act (48 Stat. 195), the Agricultural Adjustment Act (7 U.S.C.A. § 601 et seq.), the Guffey Coal Act (15 U.S.C.A. § 801 et seq.), the Railroad Retirement Act (45 U.S.C.A. § 215 et seq.), and the Child Labor Act (40 Stat. 1138, 42 Stat. 306), all remind us that, unless the courts are continually on guard to preserve the dual form of our government as founded by our forefathers, the states will indeed become mere "geographical subdivisions of the national domain."

It cannot be sustained that such a tax as the one imposed under section 804 of title VIII was clearly within the purview of those who adopted the Constitution or the framers thereof, and where the application of a taxing statute is doubtful it should be resolved against the government. Gould v. Gould, 245 U.S. 151, 38 S.Ct. 53, 62 L.Ed. 211; United States v. Merriam, 263 U.S. 179, 187, 188, 44 S.Ct. 69, 68 L.Ed. 240, 29 A.L.R. 1547.

It is also urged by counsel for the plaintiff that, if the taxes imposed under sections 801 and 804 (42 U.S.C.A. § 1001, 1004) are held for the purpose of paying the old age benefits provided for under title II, there is additional basis for holding them invalid on the ground that to except those classes defined in section 210 of title II (42 U.S.C.A. § 410) from the benefits of the tax is both capricious and arbitrary, and that such exactions cannot be justified as a tax, since it would violate the Fifth Amendment of the Constitution. Both men and women in the excepted classes, on reaching the age of sixty-five, are equally entitled to "old age benefits" as those engaged in other lines of work, since need is not essential to entitle one to the benefits.

We are, therefore, of the opinion that, whether the taxes levied under title VIII are levied for the purposes set forth in the preamble of the act, or as defined in title II, the imposition of such taxes is not a valid exercise of the power vested

in Congress under section 8 of article 1 of the Constitution of the United States.

The decree of the District Court is reversed, with one bill of costs to the plaintiff, and the case is remanded to that court for further proceedings not inconsistent with this opinion.

BINGHAM, Circuit Judge (dissenting).

The constitutionality of section 801, title VIII (42 U.S.C.A. § 1001), levying an income tax on employees, is not open to question by the plaintiff, a stockholder in the defendant corporation.

The defendant corporation has no interest in the tax. It merely withholds it from the employee's wages. It does not pay the tax, and certainly the plaintiff stockholder does not. As neither one pays or has any interest to protect, neither can question its validity. Massachusetts v. Mellon, 262 U.S. 447, 43 S.Ct. 597, 67 L.Ed. 1078.

The only question in this case, therefore, is the constitutionality of section 804 of title VIII (42 U.S.C.A. § 1004), laying an excise tax on the employer. The contention of the appellant is that it does not lay a valid excise tax.

Under this section, the subject of the tax is any employer of labor in a trade or business, except farm labor, domestic service in a private home, casual labor not in the course of the ·employer's trade or business, services of an individual of the age of sixty-five, of an officer or member of a crew, of one in the employ of the United States government or of its instrumentalities, or in the employ of a state, or political subdivision thereof, or an instrumentality of one or more states or political subdivisions, services in the employ of a corporation or organizations organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes, or for the prevention of cruelty to children or animals, no part of the earnings of which inures to the benefit of any private shareholder or individual. The object of the tax is the act of having individuals in the employer's trade or business during a given calendar year. And the measure of the tax is the wages earned and paid employees over and above $3,000 in that year.

The tax is to be collected by the Bureau of Internal Revenue and paid into the Treasury of the United States as internal revenue collections.

I regard the tax as an excise, lawfully laid, for the collection and payment of general revenue into the Treasury of the United States. See my dissent in Davis v. Boston & Maine Railroad Co., 89 F.(2d) 368, filed April 14, 1937.