## HECKENDORN v. UNITED STATES.

(Circuit Court of Appeals, Seventh Circuit.    April 14, 1908.)

No. 1,396 (1,925).

1. CUSTOMS DUTIES—EXPORT DUTY—WOOD PULP.

In the form of a license fee for the privilege of cutting pulp wood on public lands in the province of Quebec, a certain sum is collected on what is consumed in manufacture within Canada and a greater sum on what is exported. *Held*, that in its essential nature this is the imposition of an export duty equal to the difference between the two sums, and is therefore within the purview of Tariff Act July 24, 1897, c. 11, § 1, Schedule M, par. 393, 30 Stat. 151 (U. S. Comp. St. 1901, p. 1671), providing a countervailing duty on wood pulp when "any country or dependency shall impose an export duty on pulp wood exported to the United States."

2. SAME—CONSTRUCTION OF FOREIGN LAW.

Under Tariff Act July 24, 1897, c. 11, § 1, Schedule M, par. 393, 30 Stat. 151 (U. S. Comp. St. 1901, p. 1671), prescribing a countervailing duty on wood pulp imported from a "country or dependency" imposing "an export duty on pulp wood exported to the United States," customs officers are not required to pass upon questions of foreign constitutional or statutory construction, to determine whether such export duty was authorized. They are justified if they find correctly that what in fact was an export duty was acted upon by taxing officers throughout the country of exportation as fully as if imposed by unquestionable authority.

3. COURTS—NEW CASE IN ANOTHER CIRCUIT—INDEPENDENT CONSIDERATION.

An appellant is entitled to the independent consideration and judgment of a Circuit Court of Appeals in one circuit, though the question presented has been adversely decided by another Circuit Court of Appeals.

Appeal from the Circuit Court of the United States for the Eastern District of Wisconsin.

The decree of the Circuit Court affirmed the decision of the Board of General Appraisers, which upheld the ruling of the collector of customs that certain wood pulp imported by appellant was subject to an additional or countervailing duty at the rate of 25 cents for each cord of wood from which the pulp was made.

Tariff Act July 24, 1897, c. 11, § 1, Schedule M, par. 393, 30 Stat. 151 (U. S. Comp. St. 1901, p. 1671), imposes duty on wood pulp as follows:

"Mechanically ground wood pulp, one-twelfth of one cent per pound, dry weight: chemical wood pulp, unbleached, one-sixth of one cent per pound, dry weight: Provided, that if any country or dependency shall impose an export duty on pulp wood exported to the United States, the amount of such export duty shall be added, as an additional duty, to the duties herein imposed upon wood pulp, when imported from such country or dependency."

The pulp was manufactured in the province of Ontario, Dominion of Canada, from wood cut on public (crown) lands in the province of Quebec.

Certain British and Canadian statutes were proved. The British Parliament, by the British North America Act (chapter 3, St. 30–31 Vict.) gave to the Parliament of Canada exclusive legislative authority with respect to "(1) the public debt and property; (2) the regulation of trade and commerce; (3) the raising of money by any mode or system of taxation."

By the same act the respective provincial Legislatures were given power over "(2) direct taxation within the province in order to the raising of revenue for provincial purposes;  *  *  *  (5) management and sale of public lands belonging to the province, and of the timber and wood thereon;  *  *  *  (9) shop, saloon, tavern, auctioneer, and other licenses, in order to the raising of revenue for provincial, local, or municipal purposes."

The Dominion Parliament has not imposed, in name or in effect, an export duty on pulp wood. By chapter 17, St. 60–61 Vict., the Dominion Parliament has authorized the Governor in council, under certain circumstances, to declare an export duty on pulp wood. This authority has not been exercised.

The Quebec Legislature (chapter 6, tit. 4, Rev. St.) has provided as follows:

"The commissioner of crown lands, or any officer or agent under him authorized to that effect, may grant licenses to cut timber on the ungranted lands of the crown, at such rates, and subject to such conditions, regulations and restrictions as may, from time to time, be established by the Lieutenant Governor in council, and of which notice shall be given in the Quebec Official Gazette."

Under this authority the following stumpage tariff was adopted:

"All wood goods cut in virtue of a license are subject to the following charges:  *  *  *  Pulp wood per cord of 128 cubic feet,  *  *  *  65 cents, with a reduction of 25 cents per cord on timber manufactured into paper pulp in the Dominion of Canada."

In the record it is stipulated "that by virtue of such regulation all pulp wood cut on the crown lands in the province of Quebec under a license from the commissioner of crown lands of the province, or any officer or agent under him authorized to that effect, is subject to a charge of 65 cents per cord with a reduction of 25 cents per cord on timber manufactured into paper pulp in the Dominion of Canada."

The parties agree that no export duty, in name or in effect, is levied on pulp wood cut on private lands in the province of Quebec, or on pulp wood cut on either public or private lands in the province of Ontario.

Everit Brown (Henry J. Cookinham, on the brief), for importer.

John A. Kemp, Solicitor of Customs (Henry K. Butterfield, U. S. Atty., on the brief), for the United States.

Before BAKER, SEAMAN, and KOHLSAAT, Circuit Judges.

BAKER, Circuit Judge (after stating the facts as above). The questions propounded by appellant have been decided adversely to his contentions by the Circuit Court for the Northern District of New York

and by the Court of Appeals for the Second Circuit. Myers v. U. S. (C. C.) 140 Fed. 648; Id., 144 Fed. 1021, 73 C. C. A. 596. But appellant is right in claiming that he is entitled to our independent consideration and judgment.

1. In the form of a license fee for the privilege of cutting pulp wood on public lands in the province of Quebec 40 cents a cord is collected on what is consumed in manufacture within the Dominion of Canada and 65 cents a cord on what is exported. Looking beyond form, we find that a tax of 25 cents a cord is imposed on all pulp wood cut on public lands in the province of Quebec which at any point is taken beyond the boundaries of the Dominion of Canada. In its essential nature this is an export duty.

2. For the purposes of the case we may concede, without inquiry, that appellant is right in saying that the countervailing duty on wood pulp provided for in the tariff act of the United States can properly be levied only on wood pulp that is imported directly from the very country or dependency that imposes the export duty on pulp wood. From this point the argument for reversal proceeds thus, in substance: Either the Dominion of Canada or the province of Ontario must be taken as the country or dependency from which the wood pulp in question was imported. If the Dominion of Canada, the countervailing duty cannot lawfully be exacted from appellant because the Dominion has not imposed any export duty on pulp wood. The case is the same with the province of Ontario. In regard to the legislation of the province of Quebec, which is made the excuse for demanding the countervailing duty, that province was not empowered by the Kingdom of Great Britain or by the Dominion of Canada to impose export duties or to pass any act which should have effect in the province of Ontario or anywhere in the Dominion outside of Quebec's own territorial limits.

The answer, we think, is that the customs officers of the United States were not required, by appellant's protest, to pass upon questions of English or Canadian constitutional or statutory construction. Their action was justified if they found correctly that what in fact was a duty upon exportations from the Dominion of Canada was acted upon by taxing officers throughout the Dominion as fully as if it were imposed by what appellant would admit was unquestionable authority; and no other finding would be in consonance with the record.

The decree is affirmed.