CHICAGO PORTRAIT CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 21396. Promulgated June 24, 1929.

*Ernest H. Emery, Esq.*, for the petitioner.
*Arthur H. Murray, Esq.*, for the respondent.

1130

OPINION.

SIEFKIN: The parties have stipulated the facts and have also agreed that the sole question to be determined by us is whether New South Wales is a foreign country within the meaning of the Revenue Act of 1921.

New South Wales, Victoria, Queensland, South Australia, Western Australia, and Tasmania were the six colonies united into a federal commonwealth known as the Commonwealth of Australia, under an enabling Act of the British Parliament dated July, 1900, effective January 1, 1901. The first five of these colonies are on the main land of the island of Australia while Tasmania is a smaller island just south of the island of Australia. New South Wales is the oldest of the six states. In 1788, eighteen years after Captain Cook explored the east coast, Fort Jackson was founded as a penal settlement for criminals from England and transportation was not suspended until about 1839. The legislative power of the State of New South Wales is vested in a federal parliament consisting of the sovereign, a senate and a house of representatives, the sovereign being represented by a governor general, in whom the executive power is vested and who is assisted by an executive council appointed by himself. The constitution, parliament and laws of each state, subject to the federal constitution, retain and safeguard certain important state rights. New South Wales is a separate seat of government within its own boundaries.

The respondent contends that New South Wales is not a foreign country within the meaning of section 238 (e) of the Revenue Act of 1921, which is as follows:

(e) For the purposes of this section a domestic corporation which owns a majority of the voting stock of a foreign corporation from which it receives dividends (not deductible under section 234) in any taxable year should be deemed to have paid the same proportion of any income, war-profits or excess-profits taxes paid by such foreign corporation to any foreign country, or to any possession of the United States upon or with respect to the accumulated profits of such foreign corporation from which such dividends were paid, which the amount of such dividends bears to the amount of such accumulated profits: *Provided*, That the credit allowed to any domestic corporation under this subdivision shall in no case exceed the same proportion of the taxes against which it is credited which the amount of such dividend bears to the amount of entire net income of the domestic corporation in which dividends are included. * * *

The argument of the respondent is that the term " country " is synonymous with the words " nation " or " state " and that in the absence of some qualifying phrase it has always been held to mean the composite whole made up of all the subdivisions of the foreign state subject to the same central control. The respondent argues that New South Wales, in this sense, is not a country but a part of a country.

On the other hand, the petitioner contends that Congress intended to use the phrase " foreign country " in section 238 (e) as inclusive of a taxing jurisdiction imposing an income tax outside of the jurisdiction of the income-tax-levying jurisdiction of the United States.

We can assume that New South Wales is " foreign," in view of the discussion by Chief Justice Marshall in *Cherokee Nation* v. *Georgia*, 5 Peters 1, 56, in which the Cherokee Nation of Indians was held a foreign nation. In that opinion it was said:

In a political sense we call every country foreign which is not within the jurisdiction of the same government. In this sense Scotland, before the union, was foreign to England, and Canada and Mexico foreign to the United States. In the United States all transatlantic countries are foreign to us but this is not the only sense in which it is used * * *. For all national purposes embraced by the federal Constitution, the states and the citizens thereof are one, united under the same sovereign authority and governed by the same laws. In all other respects the states are necessarily foreign and independent of each other; their constitutions and forms of government being (though republican) altogether different as are their laws and constitutions. * * *

Thus, in the clause giving jurisdiction to this court the term " foreign state " is used instead of " foreign nations " as in the clause relating to commerce. And again, in Article I, paragraph 10, a still different phraseology is employed: " No state, without the consent of Congress, shall enter into any agreement or compact with a 'foreign power'." But each of these terms " nation ", " state " and " power ", as used in different parts of the Constitution, imparts the same thing and does not admit of a different interpretation.

Similarly, the cases involving the status of Porto Rico under the Tariff Act of July 24, 1897, indicate the extent to which our courts have gone in defining the phrase " foreign country." In *De Lima* v. *Bidwell*, 182 U. S. 1, it was held that the island of Porto Rico, after its cession to the United States by the treaty with Spain, was no longer a foreign country within the meaning of the Tariff Act, which declared that certain duties should be collected on all articles imported from foreign countries, and this, although Porto Rico had not been formally embraced by Congress within the customs union of the States. The court made the following observation at page 180:

A foreign country was defined by Mr. Chief Justice Marshall and Mr. Justice Story to be one exclusively within the sovereignty of a foreign nation and without the sovereignty of the United States, citing *The Boat Eliza*, 2 Gall, 4, *Faber* v. *United States*, 1 Story 1, *The Ship Adventure*, 1 Brock 234, 241.

It is assumed in *De Lima* v. *Bidwell*, *supra*, that before Porto Rico was ceded by Spain it was a " foreign country " within the meaning of the Tariff Act.

The phrase " foreign country " was construed by the Supreme Court of the United States in *Pearcy* v. *Stranahan*, 205 U. S. 257, where the court said:

The Isle of Pines must be regarded at least *de facto* under the jurisdiction of the Republic of Cuba and hence as a foreign country within the meaning of Dingley Tariff Act, July 24, 1897, c 11, 30 Stat. 151, since the United States has never taken possession of such island as included in the territory ceded by Spain to the United States in the Treaty of Peace, but, instead, through its legislative and executive departments, has recognized the Cuban government as rightfully exercising sovereignty over the Isle of Pines as a *de facto* government until the *de jure* status shall be determined.

The Supreme Court of the United States also stated in *Faber* v. *United States*, 221 U. S. 649, 658, 659:

But in the absence of some qualifying phrase " the term country in the revenue laws of the United States has always been construed to embrace all the possessions of a foreign state, however widely separated, which are subject to the same supreme executive and legislative control". *Stairs* v. *Peaslee*, 18 How. 521.

An almost exact analogy to New South Wales, as embraced in the Commonwealth of Australia, is found in the various provinces of Canada and in *Meyers* v. *United States*, 140 Fed. 648, the court was considering an importation of wood pulp from Quebec. The province of Quebec imposed a license fee for cutting wood on public lands, but reduced that license fee when the wood was manufactured into pulp in Canada. The court held that this license fee was, in effect, the imposition of an " export duty " on wood pulp exported to the

United States within the meaning of the Tariff Act, which provided a countervailing duty on wocd pulp equal to the amount of export duty imposed on wood pulp by the country of exportation. The court said:

> The Dominion of Canada is divided into provinces, among which are Ontario and Quebec. By the British North America Act (chapter 3, 30–31 Vict.), the .Dominion of Canada has exclusive power to impose export or import duties. But in sections 91 and 92 of that act, we find, in the distribution of powers among the provinces, that it is provided each provincial legislature has the following power of legislation: (1) Power of direct taxation within the province, in order to the raising of revenue for provincial purposes; (2) management and sale of public lands belonging to the province, and of the timber and wood thereon; (3) shop, saloon, tavern, auctioneer, and other licenses, in order to the raising of the revenue for provincial, local, or municipal purposes. I think each province has the power of taxation by way of license in those matters confided to it. If, in the exercise of this power lawfully granted, whether by the mother country direct or by it through the Dominion, the province in point of fact and in effect imposes an export duty on pulp wood exported to the United States, it is an imposition of that duty by the Dominion of Canada. There is no question that the Dominion of Canada is a dependency of the Kingdom of Great Britain. I do not regard it necessary to recite the various laws, etc., bearing on the subject. In effect, by authority of law, an export duty is imposed. It is not done directly by the Kingdom of Great Britain, or directly by the Dominion of Canada, but it is done under legislation authorized by the Dominion. I cannot agree with the reasoning that arrives at a conclusion that this is not a duty imposed by a dependency of the country we call England, one of the great powers of the world. * * *

In this proceeding we believe the position of the respondent is untenable. If New South Wales is, as he contends, merely a part of a larger government, either the Commonwealth of Australia or the British Empire, it must be that the imposition of the income tax imposed by New South Wales is, by reason of the delegation of powers to New South Wales, in effect an income tax of Australia or of the British Empire. If, however, this is not so, then New South Wales is not acting as a dependency or a portion of the whole, but as a sovereign state, and as such is entitled to be classified as a foreign country in its own right. We conclude that his action was erroneous, not only for this reason, but also because we are satisfied that the purpose of Congress in section 238 (e) of the Revenue Act of 1921, and related sections applying to individuals, intended to provide for a credit on income taxes paid to foreign political entities, subject only to the limitation imposed by reciprocal credit by that political entity.

Reviewed by the Board.

*Judgment will be entered under Rule 50.*