HAVANA ELECTRIC RAILWAY, LIGHT & POWER COMPANY, PETITIONER,
*v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 40304, 42570, 47339.   Promulgated July 14, 1936.

*Laurence A. Crosby, Esq., William F. Kennedy, Esq., R. R. Loening, Esq.,* and *J. Marvin Haynes, Esq.,* for the petitioner.

*Philip M. Clark, Esq.,* and *Stanley B. Pierson, Esq.,* for the respondent.

## OPINION.

SMITH: Section 238 (a) of the Revenue Act of 1918 provides:

That in the case of a, domestic corporation the total taxes imposed for the taxable year by this title and by Title III shall be credited with the amount of

any income, war-profits and excess-profits taxes paid during the taxable year to any foreign country, upon income derived from sources therein, or to any possession of the United States.

Section 238 (a) of each of the Revenue Acts of 1921, 1924, and 1926 is the same in substance.

The purposes of section 238 (a) of the taxing statutes referred to above have been fully explored and expounded by this Board in *Chicago Portrait Co.*, 16 B. T. A. 1129, and by the courts in the opinions in affirmance thereof in *Commissioner* v. *Chicago Portrait Co.*, 50 Fed. (2d) 683, and *Burnet* v. *Chicago Portrait Co.*, 285 U. S. 1. The specific question involved in that case was whether the words "foreign country" in the credit provision included the various political subdivisions making up the foreign country.

In affirming the Board's decision, the Circuit Court of Appeals for the Seventh Circuit said:

The evident purpose of section 238 is to prevent duplication of income and war-profits taxation upon the same income, and there is no logical reason why the deduction which the section undertakes to authorize should be that of one form of government or of another, so long as the country by which the tax is levied, and to which it is paid, is foreign to the United States.

We see no reason why the proper administration of section 238 would authorize deduction of such taxes when paid to the commonwealth of Australia or to New Zealand, or both, and be denied when paid to the self-governing colony of New South Wales.

The United States Supreme Court held that the meaning of the words "must be determined by reference to the purpose of the particular legislation" (285 U. S., p. 6), and that "it is necessary to consider the object of the enactment and to construe the expression * * * so as to achieve, and not defeat, its aim." The Supreme Court further stated:

* * * The fact that the provision is for a credit to the domestic corporation, against income taxes payable here, of income taxes "paid during the same taxable year to any foreign country," itself demonstrates that the primary design of the provision was to mitigate the evil of double taxation. Cognate provisions in the case of individuals disclose a similar intent. * * *

In the case of domestic corporations, the purpose is also disclosed to facilitate their foreign enterprises. * * *

From the foregoing it is plain that it was the purpose of Congress in enacting section 238 (a) of the applicable statutes to relieve domestic corporations from tax upon their income to the extent that in foreign countries in which they do business they are likewise subject to an income tax in the foreign country. Clearly the statute must be interpreted broadly to carry out the legislative intent. In general it must be said that the respondent and this Board have so construed the provision.

In defining what is an "income" tax under the foreign tax credit provisions, the respondent has consistently held that "by the use of the term 'income taxes' in section 238 (a) is meant a tax on income" (G. C. M. 6042, C. B. VIII–1, p. 186) ; "a tax on net profits is a tax on income" (G. C. M. 7629, C. B. IX–1, p. 147; "it is the tax on income in its fundamental sense as meaning gain or profit that is subject to be credited" (I. T. 2620, C. B. XI–1, p. 46) ; a "tax on profits derived from the mining industry is an income tax" (I. T. 2070, C. B. III–2, p. 251).

The respondent has also said that determination of whether a given foreign tax is thus "a tax on income" is to be made from an examination of the foreign tax law itself, without regard to any title or classification given to it by the foreign government: I. T. 2620, *supra*; G. C. M. 7629, *supra*; G. C. M. 800, C. B. V–2, p. 75; S, M. 1614A, C. B. IV–2, p. 203; I. T. 2070, *supra*.

In I. T. 2070, *supra*, it is stated: "The Bolivian Government levies a tax on mining properties in proportion to the ratio of profits to capital invested."

A translation of the Bolivian law is then set forth, which provides that:

The companies and mining enterprises, whatever the form in which they may be established, shall be subject to the payment of tax on the net profits shown on their annual balance sheets effected in the territory of the Republic as of the 31st of December, in accordance with the following bases of taxation:

(a) The application of the rate of taxation shall be effected on the percentage resulting from the profit derived in relation with capital paid up, * * *

including any capital reserves already invested in the exploitation and development of the mining business. Yearly reserves are limited to 5 percent of the total net profit. The ruling states:

In view of the foregoing provisions of the Bolivian tax law, it is held that the tax on profits derived from the mining industry is an income tax, although it is limited to income from one source. Accordingly, a domestic corporation which pays tax to the Bolivian Government on the profits derived from the mining industry carried on in Bolivia is entitled to take such tax as a credit against the tax due to the United States under the provisions of section 238 (a) of the Revenue Acts of 1921 and 1924, * * *

In G. C. M. 800, *supra*, was involved a Brazilian tax computed by an optional method. The memorandum states:

An examination of the pertinent provisions of the Brazilian income tax law discloses that the tax imposed on income computed by the optional method is not imposed on gross income. The gross receipts or the volume of sales of the corporation are used as a basis for determining the net income, such net income being calculated by means of coefficients established by a technical committee authorized to be appointed, or, pending the organization of the table of coefficients, by certain percentages already established. Actual net income is defined by the Brazilian law as gross profits less actual expenses. Net income computed by the optional method is a certain percentage of the gross profits.

Held, that the tax imposed by the Brazilian income tax law upon the income of a corporation computed by the optional method as provided by that law is an income tax and is, therefore, allowable as a credit under section 238 of the Revenue Act of 1926.

In *Manati Sugar Co.*, 26 B. T. A. 206, the issue was whether in the circumstances of the particular case the taxpayer had a right to a credit with respect to the Cuban 8 percent income tax on sugar companies under the law of July 31, 1917, which amended Military Order No. 463 of 1900. The Board stated:

As the parties have raised no question as to whether the Cuban income tax here involved is of the character referred to in the statute quoted [section 238 (a) of the Revenue Act of 1921], we will assume that it is such a tax. * * *

In G. C. M. 7629, *supra*, and in I. T. 1522, C. B. I-2, p. 199, the respondent has held that the income tax paid to the Cuban National Government was an income tax within the purview of section 238 (a) of the Revenue Acts here in question.

In *Herbert Ide Keen*, 15 B. T. A. 1243, the Board held that a French tax on the "income" of alien residents, which income was presumed to be equal to seven times the rental value of the apartment occupied, was a valid credit under section 238 (a). The Board said:

* * * Whatever may be the nature of the tax, it is imposed upon what the French Government determines to be income. * * * The fact that under the law the taxable income is determined in a manner different from the taxable income under the Revenue Act of 1921 does not change the nature of the tax. The fact that the net income of the petitioner as computed under the Revenue Act of 1921 was much in excess of the income of the petitioner determined for the purposes of the French tax does not change the character of the tax paid. The petitioner clearly paid to the Republic of France a tax upon his income in 1923. The amount of the tax paid is a credit against the income tax leviable under the provisions of the Revenue Act of 1921.

The taxes paid by the petitioner to the Municipality and Province of Havana for the tax years 1919 and 1922 to 1926, inclusive, were imposed under the provisions of the Organic Municipal Law of Cuba, May 29, 1908. The law was promulgated on May 19, 1908. Chapter IV of Title V, under "Municipal Revenues", provides in part as follows:

ART. 216.—The municipal councils may establish the revenues necessary to meet the expenditures provided for in the budgets, aside from the income of the municipality derived from its communal property and from any other legitimate sources, conforming, for this purpose, to the following bases and maximum rates of taxation, which, for said purpose, are declared compatible with the system of taxation of the state:

*     *     *     *     *     *     *

(3) Tax on the exercise of industries, commerce, professions, arts and trades, which shall not exceed the rates fixed by classes and headings in the

first three tariffs attached to the law of municipal taxation, and which may be freely regulated by the municipal council as to the remaining tariffs.

\* \* \* \* \* \* \*

(7) A tax not exceeding eight per cent. of the net profits of companies or copartnerships doing business with funds contributed by the members thereof at one time, or at periodical or irregular intervals. When their by-laws or regulations contain penal clauses for non-payment, or other clauses of a similar character, they shall pay not more than eight per cent. on their gross receipts.

This tax shall be paid to the municipality in which the company has its legal domicile.

The following are excepted:

(a) Savings banks, pawnshops and mining companies; insurance companies and banks of issue and discount, which pay taxes to the state by virtue of another law.

(b) Those companies or copartnerships which are comprised in any manner in the tariffs attached to the law of municipal taxation, or in the tariffs freely regulated by the municipal councils, and which, as industrial enterprises, pay taxes to the municipality.

After the Organic Municipal Law was promulgated companies operating gas and electric light plants protested that a tax of 8 percent upon their revenues as provided for by article 216, clause (7), of chapter IV of Title V was overburdensome. As a result of their protest the Provisional Governor, Charles E. Magoon, who had authority to change the original draft of the Organic Municipal Law promulgated on May 19, 1908, amended article 216, clause (7), by Decree No. 917, of September 21, 1908, by adding after its first paragraph the following paragraph:

Companies or persons furnishing gas, electricity or any other public service, not included in any other express provision of this law, shall pay a tax not to exceed six per cent of the net proceeds.

As amended by Decree No. 917, the Organic Municipal Law was put into effect by the same decree on September 21, 1908. The Organic Municipal Law required as its complement the Municipal Tax Law and Collection Procedure of Cuba of September 22, 1908. The specific quota taxes contemplated by article 216, clause (3), of chapter IV of Title V of the Organic Municipal Law, were made specific by certain tariffs made a part of the Municipal Tax Law and Collection Procedure. The third tariff of the latter set forth the license taxes payable by persons or corporations on the exercise of industries, commerce, professions, arts, and trades. These specific quota taxes are comprehended in 130 paragraphs. The final paragraph of the third tariff provides:

131.—Gas and Electric Light works belonging to stock companies or private persons, shall pay six per cent. of their net earnings. For the purposes of the tax, the net earnings shall be considered to be the amount resulting from their balances, deducting from their receipts the expenses, properly vouchered, for all items of operation and maintenance of the business to which they are dedicated.

In support of his position that the tax here in question is a privilege or concession tax imposed under the quoted paragraph 131 of the third tariff, the respondent relies upon the testimony of de Cardenas and other Government witnesses and the opinion of the Court of Appeals of Havana, Sentencia 685 of 1931, cited by de Cardenas in his testimony.

The decision of the Court of Appeals, which is a *nisi prius* court, referred to above, supports the contention of the respondent. The petitioner has, however, now presented to the Board numerous decisions of the same court which hold directly contrary to Sentencia 685, many of which were rendered prior to Sentencia 685 and one thereafter. The petitioner has also called the Board's attention to decisions of the Supreme Court of Cuba involving the precise point, some of which are directly opposed to Sentencia 685. Among these is Supreme Court Decision No. 31, November 30, 1911; No. 37, May 30, 1927, which affirmed Audiencia (Court of Appeals) of Havana Decision No. 865, November 25, 1926; No. 24, November 22, 1913; No. 2, January 23, 1913; and No. 27, February 18, 1930.

Among the witnesses presented by the petitioner were Otto Schoenrich, member of the Bar of New York, and several other states, as well as of Cuba and Puerto Rico, formerly a judge in Puerto Rico, Secretary and Chief of Office of the Provisional Government of Cuba during the second American intervention, 1906 to 1909, and a member of the Advisory Commission which in 1907–1908 drafted the Cuban Municipal and Provincial legislation involved in this case; Oscar Garcia Montes, a prominent member of the Cuban Bar and an authority on Cuban taxation, who for 13 years was successively assistant professor and full professor of political economy and public finance at the University of Havana; Jose Victor Tapia y Puente, a member of the Cuban Bar, and a member of the Cuban Supreme Court for 29 years. He participated in all the Cuban Supreme Court decisions bearing on the issue in this case, including No. 31 of 1911, No. 24 of 1913, No. 37 of 1927, and No. 11 of 1928. All of these witnesses testified that in their opinion the taxes paid by the petitioner to the Municipality and Province of Havana were taxes upon the net income of the petitioner from the operation of gas and electric light plants; that they were in no sense taxes imposed upon the doing of business by the companies; that they represented simply a portion of the income taxes payable by those companies made available to the municipalities. Montes testified that the tax under clause (7) of article 216 of the Organic Municipal Law was of the same nature as the national income tax on share companies under Order No. 463 of 1900. It furthermore appears that Carrera Justiz, the draftsman of the law, said at the meeting of the Advisory Commission which

discussed clause (7) of article 216: "It is Order No. 463 [the national income tax], brought in part to the Municipalities."

By the great weight of legal authority in Cuba it must be held that the taxes paid by the petitioner to the Municipality and Province of Havana were imposed by article 216, clause (7) of chapter IV of Title V of the Organic Municipal Law and not under clause (3) which relates to fixed quota or privilege taxes. If article 216 had not been amended by Decree No. 917 of September 21, 1908, by adding to clause (7) the following paragraph:

Companies or persons furnishing gas, electricity or any other public service, not included in any other express provision of this law, shall pay a tax not to exceed six per cent of the net proceeds.

we think there would be grounds for the contention made by the respondent that the inclusion of the tax in paragraph 131 of the third tariff of the Municipal Tax Law and Collection Procedure of Cuba of September 22, 1908, was determinative of the nature of the tax; for in *Flint* v. *Stone Tracy Co.*, 220 U. S. 107, it was said:

While the mere declaration contained in a statute that it shall be regarded as a tax of a particular character does not make it such if it is apparent that it cannot be so designated consistently with the meaning and effect of the act, nevertheless the declaration of the lawmaking power is entitled to much weight, and in this statute the intention is expressly declared to impose a special excise tax with respect to the carrying on or doing business by such corporation, joint stock company or association, or insurance company. * * *

To the same effect is the case of *Spreckels Sugar Refining Co.* v. *McClain*, 192 U. S. 397, in which a special tax measured by the gross receipts of the business of refining oil and sugar was sustained as an excise in respect to the carrying on or doing of such business. Also, in *Security Savings & Commercial Bank* v. *District of Columbia*, 279 Fed. 185, a tax on gross earnings was held a franchise tax, and in *Potomac Electric Power Co.* v. *Rudolph*, 29 Fed. (2d) 634, a tax on gross receipts was held a franchise tax as distinguished from a property tax. Since, however, there are many decisions of the Supreme Court of Cuba and also of the Court of Appeals of Havana and other provinces which hold that the tax was not a privilege tax, and since the evidence in this case shows that the petitioner had no franchise or concession from the municipalities of Cuba or from other governmental authorities for the carrying on of business and that the tax was not payable as a condition of doing business, it must be held that the tax is not a franchise or privilege tax.

In the circumstances of this case we do not find it necessary to pass upon the question whether a franchise or privilege tax payable on net income is an income tax within the purview of section 238 (a) of the Revenue Acts here in question.

The taxes were paid upon the petitioner's "net proceeds" from the operation of gas works and electric light plants. If the only

income of the petitioner had been from the operation of these facilities we think there could be no question but that they were income taxes. The fact that they were paid to the Municipality and Province of Havana rather than to the Cuban National Government is of no importance. *Burnet* v. *Chicago Portrait Co., supra.* Likewise, it is unimportant that they were not paid upon the petitioner's entire net income. The tax paid upon net income of one branch of a taxpayer's business is as much an income tax as one paid upon net income from all sources.

From a consideration of all of the evidence in this record we conclude that the taxes paid to the Municipality and Province of Havana are income taxes which may be credited against the income tax payable to the United States under section 238 (a) of the Revenue Acts of 1918, 1921, 1924, and 1926. The action of the respondent in disallowing the claimed credits is reversed.

Reviewed by the Board.

*Judgments will be entered under Rule 50.*

LEECH dissents.