SEATRAIN LINES, INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 102561.   Promulgated May 6, 1942.

*H. Maurice Fridlund, Esq.,* and *James Ragan Roberts, Esq.,* for the petitioner.
*Ellyne E. Strickland, Esq.,* for the respondent.

#### OPINION.

VAN FOSSAN: The Commissioner determined a deficiency of $834.30 in the petitioner's income tax for the year 1936. The petitioner claims an overpayment of $11,117.51 for that year.

The sole issue is whether or not the petitioner is entitled to a credit under section 131 (a) (1) of the Revenue Act of 1936 for a tax of 3 percent of the gross income obtained for freight and passenger transportation, paid under Cuban law.

The facts were stipulated and we adopt them as our findings of fact. Based on such stipulation and the translations of Cuban law attached thereto, the facts material to the issue may be summarized as follows:

The petitioner is a domestic corporation, with its office in New Orleans, Louisiana. Its income tax return for 1936 was filed with the collector of internal revenue for the district of Louisiana, and was made on the accrual basis.

The petitioner is a steamship company engaged in the business of carrying freight and passengers from ports in the United States to ports in the United States and in the Republic of Cuba, and from ports in Cuba to ports in the United States.

The Republic of Cuba imposes a tax of 3 percent on the freights and passage money received by foreign shipping companies for cargoes and passengers taken aboard in Cuban ports. This tax is imposed by reason of certain provisions in the Law of July 6, 1928, which amended article III of the Cuban Law known as "Military Order No. 463 of 1900", hereinafter referred to as Order No. 463.

Order No. 463 provided that certain "entities" should pay to the state "8 per cent tax on their profits" and that companies engaged in navigation should contribute 6 percent to the state (article III, b). Article X is as follows:

X. There shall be considered as net profits for the collection of the Tax that balance which may result after reduction of the proven expense of operation and maintenance of the business in which the Banks, Companies and enterprises are engaged.

There shall be credited the amount of industrial and territorial taxes that may be paid for the assessable industries which they may exercise and the properties which they may own. (The amount of these taxes is not to be deducted from the quota to be paid to the State, but shall be accredited or included among the expense of the Companies in accordance to resolutions [Rulings] made or taken in the matter.)

Prior to July 6, 1928, continual controversy arose between the shipping companies and the tax authorities of the Cuban Government on the question of what proportion of expenses should be allowed against revenues derived from Cuban sources in determining "net profits." The taxpayers and the Cuban Government were never able to reach an agreement on the apportionment of expenses. Ultimately, however, the Cuban Government offered to compromise the difficult question by a decrease of 50 percent in the rate of the tax, making it 3 percent, and applicable to gross income from Cuban sources rather than on "net profits."

The Law of July 6, 1928, in article XV, amended Order No. 463 as follows:

"ARTICLE III. The following shall pay six per cent of their net profits as Tax to the State:

"a) General service railroads, that is, those engaged in public exploitation of transport of passengers and merchandise, that belong either to companies or to individuals, in accordance with those laws which are in force governing same.

"b) National shipping companies and those foreign ones authorized to engage in coastwise traffic.

"Foreign shipping companies which engaged in transporting freight and passengers between national and foreign ports shall be exempt from the Tax on Profits and shall, in lieu thereof, pay a tax of 3% of the gross income obtained for freight and passengers which they may ship in national ports, without prejudice of their continuing to pay tax for other reasons (conceptos) according to the legislation in force.

"The tax is to be paid precisely by said shipping companies or their Agents; and they shall not charge same to the shippers nor passengers."

The Tax due according to Paragraph (b) of Article III of Order No. 463 of 1900 by the Companies which, according to that Article, are subject to tax in accordance with their income, is remitted.

and in article XXI it also amended article X of Order No. 463, as follows:

"Article X: For the purpose of determining the net profits on which the individuals or companies obligated to pay the ∙tax on profits must pay the corresponding proportion of tax, the following shall be deducted from the gross income which they may obtain, whatever their source:

"a) The amount of all ordinary and necessary expenses paid or incurred during the year in the exploitation of the business; and

"b) The amount of the ordinary losses suffered by the Company during the normal course of business.

"For the purposes of application of this Law, income shall be understood to be everything received, whether in cash, in securities or in credits, which modify the wealth of the taxpayer and of which he may freely dispose of without restoring their amount.

"There shall be accepted as ordinary expense of exploitation of the business the amount of contributions and taxes paid to the State, to the Province or to the Municipalities, with exception of those paid as tax on profits."

Pursuant to the above laws, during the calendar year 1936 there were accrued and the petitioner duly paid to the Republic of Cuba as and for taxes on freight revenues the amounts hereinbelow set forth for each of the three-month periods indicated:

| Quarter ended— | Gross revenues for freights and passengers to U. S. ports, taken aboard in Cuban ports | Tax at 3 percent |
|---|---|---|
| 3/31/36 | $80,172.48 | $2,284.91 |
| 6/30/36 | 136,969.39 | 3,903.63 |
| 9/30/36 | 118,208.45 | 3,368.94 |
| 12/31/36 | 54,737.97 | 1,560.03 |
| Total | 390,088.29 | 11,117.51 |

In its Federal income tax return for the calendar year 1936, the petitioner signified its desire to have the benefit of section 131 of the Revenue Act of 1936.

For the period here involved, the Republic of Cuba also imposed a tax of 1½ percent (subsequently increased to 2 percent) on sales

and gross receipts. The material parts of the law, known as Decree-Law No. 393, imposing such tax, are substantially as follows:

The Decree-Law recited prior laws establishing a tax on the sale, exchange, or transfer of merchandise and gross receipts, and stated that such taxes henceforth would be governed by the present Decree-Law. It then provided that all merchants, manufacturers, or industrialists, not expressly exempt, should pay a tax equivalent to 1½ percent of the price or value of the articles sold, exchanged, or transferred. Article IX is as follows:

ARTICLE IX: To the effects of this Decree-Law, the following natural or juridical persons shall be considered as merchants and therefore subject to the payment of the 1½ percent tax on gross receipts:

*     *     *     *     *     *     *

12. Those who directly or indirectly transport passengers or freight in any manner, whether by land, sea, or air, it being understood that in case of transportation by sea or air that the tax shall be paid on freight, whether collected in Cuba or abroad, on that portion of the transportation which begins in Cuban territory, which act shall be determined by the fact of loading, in whole or in part, a vessel or an aeroplane.

In regard to the transportation of passengers by sea or air, tax shall be paid on the amount of the passages, whether collected in Cuba or abroad, covering the transportation which begins in Cuban territory, which act shall be determined by the fact of the departure of the passenger from same.

*     *     *     *     *     *     *

[The article specifies 18 other classes of merchants.]

The petitioner paid to the Republic of Cuba various amounts as taxes on sales and gross receipts accrued during 1936. It filed its 1936 Cuban tax returns pursuant to the Law of July 6, 1928, and the Decree-Law No. 393.

The returns filed by the petitioner recite that it is obligated to contribute the "3 per cent tax on the income obtained from cargo and passengers leaving Cuba, created by the Law of July 6, 1928," and declare that the "income subject to payment" is as set forth. The receipt issued by the Treasurer of Cuba describes the tax as being "3 per cent of $——— income received for freights." The returns of the 1½ percent sales tax are made on a different form and under other laws and refer to "gross sales and income." The returns of the 3 percent tax were made quarterly while the returns of the 1½ percent tax were made monthly.

The question presented by the above facts is: Was the 3 percent Cuban tax an income tax or an excise tax? If the former, section 131 (a) (1), Revenue Act of 1936,[1] allowing a credit of the amount

---

[1] SEC. 131. TAXES OF FOREIGN COUNTRIES AND POSSESSIONS OF UNITED STATES.

(a) ALLOWANCE OF CREDIT.—If the taxpayer signifies in his return his desire to have the benefits of this section, the tax imposed by this title shall be credited with:

(1) CITIZEN AND DOMESTIC CORPORATION.—In the case of a citizen of the United States and of a domestic corporation, the amount of any income, war-profits, and excess-profits taxes paid or accrued during the taxable year to any foreign country or to any possession of the United States; * * *

paid or accrued, is controlling; if the latter, the petitioner is entitled only to a deduction of the amount so paid or accrued.

We have no doubt that the tax in controversy was considered and treated by the taxing authorities of Cuba as strictly an income tax. The forms for returns, the references to the underlying Law of July 6, 1928, the receipts issued by the Treasurer, and other facts in the record all point unmistakably to this conclusion. The historical setting and development of the tax also confirm this view. In short, the tax originated and remained wholly within the scope of the Cuban income tax legislation.

Contemporaneously, a sales or gross receipts tax, admittedly an excise tax, was in force in Cuba and the petitioner paid taxes under the law establishing it. Returns, reports, receipts, and other administrative details of the two types of taxes were kept separate and distinct in the Treasury Department of the Republic of Cuba. The petitioner's tax payments followed this routine of segregation and differentiation.

The respondent contends that while the answer to the question before us "must depend in considerable part on the Cuban law * * * it is more important that the facts be analysed in the light of our own concepts." He then argues that it is a well established principle of law that taxes based on gross receipts constitute a tax on business and "are generally held to be an excise tax." He advances the theory that the modification of Order No. 463 by the provisions of the Law of July 6, 1928, with no further legislation or words of description, transformed the tax from an income tax to an excise tax.

It will be noted that respondent's contention is directed to a *gross receipts* tax, not a *gross income* tax. The two concepts are not synonymous. Paul & Mertens, Law of Federal Income Taxation, vol. 1, § 5.09.

In the cases cited by the respondent to support his theory that a tax based upon gross receipts is an excise tax, the privilege of exercising a franchise or the privilege of doing business is the controlling factor. The 3 percent tax here involved is not levied on the privilege of doing business but on the gross income derived from the petitioner's functions of carrying passengers and freight. In no provisions of the Cuban Law of July 6, 1928, is the privilege of carrying on the petitioner's business made the basis of the tax.

The 3 percent by which the original 6 percent rate was reduced was apparently an approximation of the deductions allowed in arriving at net income and was adopted as a compromise measure in order to avoid the complex and vexatious allocation and calculation of the deductible items peculiar to the petitioner's business.

Therefore, it appears that as to petitioner's business the present 3 percent tax is but the successor of the 6 percent income tax, took its place in the tax structure of Cuba, and preserved its character as an income tax.

Not only is respondent's position not supported by the Cuban law, it finds no basis in our own tax interpretations. Section 1400 of chapter 9 (entitled "Employment Taxes"), Internal Revenue Code, requires the payment of certain taxes on the wages received by every individual after December 31, 1936, (with exceptions named in section 1426 (b)), but section 1402 provides that such tax is not deductible in computing income taxes imposed by chapter 1. The Senate Finance Committee Report states that the deduction was not allowed because the tax is an *income* tax.[2] Likewise, the optional Form 1040A, used so widely in the current income tax returns, is based on a gross income of $3,000 and less. The respondent has ruled that Canadian dividend taxes, Canadian copyright taxes, French rental value taxes, Mexican interest taxes, and Argentine dividend taxes are all income taxes and are allowable as a credit under section 131. See also *Herbert Ide Keen*, 15 B. T. A. 1243; and *Havana Electric Railway, Light & Power Co.*, 34 B. T. A. 782.

There can be no doubt of the right of Congress to impose a tax on gross income under the Sixteenth Amendment to the Constitution. The allowance of deductions from gross income in computing the proper income tax due is solely a matter of legislative grace. *Deputy* v. *duPont*, 308 U. S. 488. In *New Colonial Ice Co.* v. *Helvering*, 292 U. S. 435, the Supreme Court said:

The power to tax income like that of the new corporation is plain and extends to the gross income. Whether and to what extent deductions shall be allowed depends upon legislative grace; and only if there is clear provision therefor can any particular deduction be allowed.

Thus, although deductions may be allowed, the tax remains an income tax because it is levied on income and not on the privilege of doing business. If no deductions were permitted by statute the tax would still be an income tax.

In so far as I. T. 2596, CB X-2, 184 (1931), cited and relied upon by the respondent, is not in accord with our decision, it must be disregarded. Attention is directed to the fact that in the translation of the Cuban statutes quoted in I. T. 2596 the crucial phrase is rendered as "3 per cent on the gross revenues received * * *" while the translation stipulated by the parties in the present case is "3 per cent of the gross income obtained * * *."

Reviewed by the Board.

*Decision will be entered under Rule 50.*

---

[2] 74th Cong., 1st sess., S. Rept. No. 628, p. 42.